894

Grafton
No. 80-199

GEORGE C. PARK, ADMINISTRATOR
OF THE ESTATE OF WILLIAM H. PARK

v.

ROCKWELL INTERNATIONAL CORPORATION

October 14, 1981

*Ray, Hopkins & DeHart*, of Plymouth (*William H. Hopkins* on the brief and orally), for the plaintiff.

*Hamblett & Kerrigan*, of Nashua (*John V. Dwyer, Jr.*, on the brief and orally), for the defendant.

BROCK, J.   This appeal involves a wrongful death action (RSA 556:12) brought by the administrator of a deceased employee's estate against the employer. The defendant moved to dismiss the father's action as administrator claiming that, because the decedent employee died without surviving dependents, RSA 281:12 (Supp. 1979) bars the action and limits recovery by decedent's estate to that expressly provided under RSA 281:22. RSA 281:22 IV provides that an employee's estate may recover only $1,200 for burial expenses against the employer when the employee leaves no dependents.

The plaintiff objected to the motion to dismiss on the grounds that RSA 281:12 (Supp. 1979) and :22 unconstitutionally discriminate against the estates and persons of employees who suffer fatal work-related injuries and leave no dependents, thereby violating the principles of equal protection. The Superior Court (*Johnson*, J.) granted the motion to dismiss, and the plaintiff appealed to this court.

Briefly, the facts underlying this action are that the twenty-year-old decedent, William H. Park, was killed on November 2, 1978, in a job-related accident at his place of employment, the Draper Division of Rockwell International Corporation at Beebe River, Campton, New Hampshire. He was killed while performing maintenance on a Nicholson Ring Debarker, a machine used to remove bark from logs. While he was working on the machine, a photoelectric beam was broken which caused a set of heavy rollers to descend upon him, crushing him to death.

Prior to 1947, it was established under our workmen's compensation law that an employee's estate could seek recovery for the death of the employee from the employer or receive any applicable workmen's compensation benefits. *See Gagne v. Greenhouses*, 99

N.H. 292, 294, 109 A.2d 840, 841 (1954). In 1947, for the first time, the legislature required an employee to elect between compensation and his common-law rights to sue the employer. *Id.,* Laws 1947, 266:10. Thus, where an employee did not elect to be covered by workmen's compensation, the employer could still assert common-law defenses in any action brought by or on behalf of an employee for damages for "personal injury . . . or for *death resulting.*" *Gagne,* 99 N.H. at 296, 109 A.2d at 842. Damages so paid by the employer belonged to the beneficiaries named in the statute. *See Pike v. Adams,* 99 N.H. 221, 108 A.2d 55 (1954).

The constitutionality of the fifteen-day election period under the predecessor to the present RSA 281:12 was before this court in *Carbonneau v. Company,* 96 N.H. 240, 73 A.2d 802 (1950), wherein it was held that there was no unconstitutional denial of a right to a jury trial for damages because "the employee is not compelled to give up any common law or constitutional right. It is a matter of choice whether he avails himself of one or the other." *Id.* at 244, 73 A.2d at 806.

In 1959, however, the legislature further amended the law, creating a conclusive presumption that an employee has chosen to be covered by workmen's compensation. Laws 1959, 187:4. Since that time, this court has not had occasion to consider the constitutionality of any of the provisions of our workmen's compensation law. In 1973, however, reference was made to RSA ch. 281 as being "similar in many respects" to the pending no-fault automobile insurance legislation then before the justices for review. *Opinion of the Justices,* 113 N.H. 205, 212, 304 A.2d 881, 886 (1972). At that time a majority of the justices expressed the opinion that a proposal then pending before the legislature setting a threshold of $500 in medical specials before suit for pain and suffering could be brought was a "rationally related" point of demarcation. Two justices, however, expressed the view that such a provision would result in the curtailment of individual rights in contravention of N.H. CONST. pt. I, art. 14 "in the absence of provision of a satisfactory substitute." *Opinion of the Justices,* 113 N.H. at 215, 304 A.2d at 888. We have since adopted the latter position in an opinion in which all the justices of this court concurred. *Carson v. Maurer,* 120 N.H. 925, 943, 424 A.2d 825, 838 (1980).

The constitutional question now before us was not addressed in a recent case involving actions against an employer for death of an employee because RSA 281:12, as of 1977, barred only actions by the *employee,* and not those brought by his legal representatives. *Ransmeier v. Camp Cody, Inc.,* 117 N.H. 736, 738, 378 A.2d 752,

753–54 (1977). In *Ransmeier*, we held that an employee's estate could maintain a wrongful death action against the decedent's employer if work-related injuries caused the decedent's death. At that time, RSA 281:12 (Supp. 1975) barred *employees* from bringing common-law actions against their employers for work-related injuries but did not bar their *estates* from bringing the statutorily created wrongful death action. RSA 281:12 (Supp. 1975). The court there noted that in *Gagne v. Greenhouses*, 99 N.H. at 297, 109 A.2d at 844, a review of legislative history indicated that the legislature had specifically *deleted* from the definition of the word "employee" the phrase: "Any reference to an employee . . . shall, when the employee is dead, also include his legal representatives. . . ." H.B. 35, 1947 Session; *see* N.H.H.R. JOUR. 953, 1014 (1947). The *Ransmeier* case involved the interpretation of a statute and, therefore, was a clarification of what the law always had been. *See State v. Gomes*, 116 N.H. 591, 364 A.2d 1260 (1976). When this court indicated in *Ransmeier* that the legislature "could have" otherwise provided, it in no way meant to imply that any legislative change could be in derogation of constitutional rights. *Ransmeier v. Camp Cody, Inc.*, 117 N.H. at 738, 378 A.2d at 754.

In 1978, the legislature amended the workmen's compensation law, RSA 281:12 in particular, to read as follows:

> *"Employees Presumed to Have Accepted.* An employee of an employer subject to this chapter shall be conclusively presumed to have accepted the provisions hereof and on behalf of himself, *or his personal or legal representatives,* to have *waived all rights of action* whether at common law or *by statute or otherwise . . . ."*

RSA 281:12 (Supp. 1979) (emphasis added). This amendment, which effectively barred the estates of deceased employees from bringing statutory actions against an employer (such as RSA 556:12), became effective on June 27, 1978, four months *prior* to the death of the employee in the present case. Thus, under the statutory scheme now in effect, the estates of employees who, like the decedent here, are fatally injured on the job, and leave no dependents at the time of death, are entitled to receive only $1,200 in burial expenses. RSA 281:22 IV. The estate and non-dependent relatives receive nothing beyond this sum even if reasonable funeral and burial expenses exceed $1,200. When the legislature adopted this amendment in 1978, it failed to provide any increase in benefits or *quid pro quo* in return for eliminating an employee's estate's right to sue.

In all other wrongful death cases, the legislature has provided that the estate of a person who dies without dependents is entitled to receive up to $50,000, RSA 556:13, even when the named defendant is a governmental unit, RSA 507-B:4 (Supp. 1979); *see Estate of Cargill v. City of Rochester*, 119 N.H. 661, 663, 406 A.2d 704, 705 (1979). The issue before us is whether, under the circumstances presented in this case, RSA 281:12 (Supp. 1979) and :22 violate "the equal protection mandate that 'those who are similarly situated be similarly treated.'" *Carson v. Maurer*, 120 N.H. 925, 931, 424 A.2d 825, 830 (1980) (quoting *Estate of Cargill v. City of Rochester*, 119 N.H. 661, 665, 406 A.2d 704, 706 (1979) and *Belkner v. Preston*, 115 N.H. 15, 17, 332 A.2d 168, 170 (1975)).

█ Obviously, in cases involving wrongful death, dependentless employees may be treated differently than other deceased persons who die without dependents. *Compare* RSA 281:12 (Supp. 1979), :22 *with* RSA 507-B:4 (Supp. 1979) *and* RSA 556:13. The basis for such a distinction lies in the employer-employee status of the plaintiff and the defendant. RSA 281:12 (Supp. 1979), :22. Unlike the situation in *Estate of Cargill supra*, the favored defendant here is a private party and not a governmental unit, and we therefore need not be concerned with the constitutionality of the various statutes that may place even greater restrictions on recovery when the defendant is one of a variety of certain governmental agencies. *See id.* at 668, 406 A.2d at 708.

██ Generally, workmen's compensation laws withstand constitutional attack on due process grounds because they provide "a *quid pro quo* for potential tort victims whose . . . rights of action are supplanted by the statute." *See Carson v. Maurer*, 120 N.H. at 943, 424 A.2d at 830. While the provisions of RSA ch. 281 may generally satisfy this requirement, the plaintiff in this case argues that under sections 12 and 22, as applied to employees killed in work-related accidents who leave no dependents, nothing has been given in return for eliminating their rights of action. As a result, persons like plaintiff's twenty-year-old decedent, or those similarly situated, are literally worth nothing except a payment towards one creditor—the funeral director. In *Estate of Cargill*, we considered the due process ramifications of the $50,000 statutory limitation on tort claims against governmental units and stated that "[t]he legislature does not have complete discretion to set 'any scale of compensation, however insignificant on the one hand or onerous on the other.'" *Estate of Cargill v. City of Rochester*, 119 N.H. at 668, 406 A.2d at 708 (quoting *New York Central R.R. v. White*, 243 U.S.

188, 205 (1917)). We then noted that the $50,000 limitation in that wrongful death case was "precariously close to the boundary of acceptability." *Estate of Cargill v. City of Rochester, supra* at 669, 406 A.2d at 708. Because the *quid pro quo* or effective limit of recovery in cases such as the one before us is only $1,200, we obviously consider it to be "very wide of any reasonable line of demarcation." *See id.,* 406 A.2d at 708 (quoting *Opinion of the Justices,* 113 N.H. 205, 213, 304 A.2d 881, 887 (1972)).

■ While wrongful death actions are statutorily created actions, *Hebert v. Hebert,* 120 N.H. 369, 370, 415 A.2d 679, 680 (1980), the legislature has granted the privilege of bringing such an action, RSA 556:12, and "[t]he equal protection guarantee extends to the State's granting of privileges as well as to its imposing of restrictions. [Citation omitted] 'Equality of benefit is no less required than equality of burden.' " *State v. Amyot,* 119 N.H. 671, 673, 407 A.2d 812, 813 (1979) (quoting *Rosenblum v. Griffin,* 89 N.H. 314, 321, 197 A. 701, 706 (1938)).

Although "[t]he equal protection clause does not require mathematical equivalence," *Estate of Cargill v. City of Rochester,* 119 N.H. at 668, 406 A.2d at 708, the case before us involves a very significant departure from any form of equivalence: the recovery of a maximum of $1,200 in burial expenses contrasted to the $50,000 maximum established in certain other wrongful death situations.

In order for RSA 281:12 (Supp. 1979) and :22 to withstand constitutional challenge under this State's guarantee of equal protection, N.H. CONST. pt. I, arts. 1 and 12, the limitations and restrictions therein imposed upon persons situated similarly to the deceased employee in this case "must be reasonable, not arbitrary, and must rest upon some ground of difference having a fair and substantial relation to the object of the legislation. . . ." *Carson v. Maurer,* 120 N.H. at 932, 424 A.2d at 831. (Citations omitted.) In order to hold that these provisions of our workmen's compensation law are constitutional, we would have to determine that the lives of deceased employees, leaving no one dependent upon them *at the time* of their work-related deaths, are essentially "worthless." This we cannot do. *Cf. Green v. Bittner,* 424 A.2d 210 (N.J. 1980).

In so concluding, we are mindful of a further consideration. To raise a child today has been estimated by the government to cost from $69,232, U.S. News and World Report, Dec. 29, 1980, p. 77, to $85,088, "Costs of Being a Parent Keep Going Higher," Wall Street Journal, October 2, 1980, p. 1. As the New Jersey Supreme Court noted in *Green, supra* at 219, while parents may not usually

be financially "dependent" on their young children, there may well come a time due to both the vicissitudes of life and the natural process of aging when parents may become as dependent on the resources of their children as their children were on theirs in earlier years. It would not be just, under the pretext of qualifying the decedent for workmen's compensation benefits which under the terms of that statute he will never receive and which are nominal in nature, to foreclose the right of his estate, where the facts otherwise warrant it, to maintain a wrongful death action against the employer.

■■ RSA 281:12 (Supp. 1979) prevents the estates of employees who are killed in the course of their employment, such as in this case, from bringing a wrongful death action (RSA 556:13) against the decedent's employer and possibly recovering up to $50,000. In return, the estate of the plaintiff is given the right to receive up to a maximum of $1,200 toward burial expenses. RSA 281:22 IV. Thus, an employer, no matter how negligent or egregious its conduct, may, except for the possible payment of $1,200, escape all liability for the work-related death of an employee. This, we believe, is not only contrary to sound public policy but also violates the equal protection provisions of our State constitution. N.H. CONST. pt. I, art. 12. Accordingly, we hold that the limitation set forth in RSA 281:12 (Supp. 1979) and :22, to the extent it applies to employees without dependents who are killed in the course of their employment, is unconstitutional, and the plaintiff in this case is entitled to proceed with an action for wrongful death against his decedent's employer if he elects to forego the benefits otherwise provided under RSA ch. 281.

Nothing in this opinion is to be construed as precluding legislative action to provide a level of benefits under RSA 281:22 IV that will withstand constitutional challenge.

*Remanded.*

KING, C.J., filed a dissenting opinion; BOIS, J., dissented without opinion; the others concurred.

KING, C.J., dissenting: There are few who would reasonably contend that the value of a human life can be adequately and fairly reduced to an exact figure, nor can one easily defend the meager figure of $1,200 awarded by RSA 281:22 IV for the death of an employee who dies without dependents.

Nevertheless, the decision to increase the $1,200 amount rests in the first instance with the legislature, not the judiciary. *See Opinion of the Justices*, 116 N.H. 351, 357, 358 A.2d 667, 672 (1976); *Opinion of the Justices*, 111 N.H. 136, 143, 276 A.2d 821, 825 (1971). The legislature has long manifested its intent not to increase that amount. *See* N.H.H.R. Jour. 198, 421–22 (1957).

Even if revision of the workmen's compensation statute is a proper exercise of judicial power, this court should allow the legislature time to act before acting itself. *See Alvis v. Ribar*, 421 N.E.2d 886, 896. The New Hampshire legislature deserves deference in this matter and a chance to correct the inadequacies of RSA ch. 281 before the judiciary assumes the task. *See Merrill v. City of Manchester*, 114 N.H. 722, 730, 332 A.2d 378, 384 (1974).