<hr/>

Coos
No. 99-097

## PAULINA L. TUCKER, INDIVIDUALLY, AND AS MOTHER AND NEXT FRIEND OF MARTIN ROLLINS AND JASON ROLLINS

v.

## MERCHANTS INSURANCE GROUP

March 21, 2001

*Martin, Lord & Osman, P.A.*, of Laconia (*David J. KillKelly* on the brief and orally), for the plaintiff.

*Wiggin & Nourie, P.A.*, of Manchester (*Gordon A. Rehnborg, Jr.* and *Daniel Duckett* on the brief, and *Mr. Duckett* orally), for the defendant.

BRODERICK, J. The plaintiff, Paulina L. Tucker, and the defendant, Merchants Insurance Group (Merchants), filed cross-motions for summary judgment to determine whether Merchants was obligated to provide automobile liability insurance coverage to the plaintiff, individually and as mother and next friend of Martin and Jason Rollins. The Superior Court (*Smith*, J.) found that Merchants had properly cancelled the policy at issue for nonpayment of premium and thus had no obligation to provide coverage. We affirm.

The parties stipulated to the following facts. Merchants issued an automobile insurance policy to William M. Rollins, Jr., in January 1996. Rollins was Martin's and Jason's father. Under Merchants' billing procedures, Rollins was required to pay a deposit of at least twenty-three percent of the total policy premium, which he did. The balance was divided into equal installments payable over seven months. If installment payments were made timely, the policy would be paid for at the end of eight months and the procedure would be repeated for successive years. If Rollins failed to make an installment payment, however, that amount was added to the premium balance and the remaining installments were proportionally recalculated to reflect an increase of the minimum amount due for each installment.

Merchants sent Rollins a notice about billing procedures, in which it informed him that "[p]ayment of at least the minimum amount due [per installment] is necessary." Further, it notified him that "[n]o

past due notices or late notices [would] be sent to [him]," and that ownership in the policy would be lost if he failed to make timely payments.

Rollins made timely payment of the first installment in February 1996. He failed to pay the March and April installments. Notice of the next installment was sent in late April. That installment also went unpaid. Merchants sent a cancellation notice to Rollins on May 3, 1996, but he then made a payment in the amount of $50.00 that rendered the notice ineffective and the policy was reinstated.

On May 30, 1996, Merchants sent the next installment bill to Rollins, which he failed to pay. On July 1, 1996, another installment bill was sent to Rollins reflecting a recalculated minimum balance that was due July 17, 1996. On July 11, 1996, after calculating that the equity in the policy would expire on July 26, 1996, if no payment was received, Merchants issued a notice of cancellation which stated the policy would be cancelled for "nonpayment." As no payment was received, Merchants cancelled the policy on July 26, and a declaration of cancellation was sent to Rollins in August 1996. Rollins made no effort to reinstate his policy.

In November 1996, the plaintiff's minor children and Rollins were injured in an automobile accident. Rollins subsequently died as a result of his injuries. The plaintiff, alleging that the children's injuries were caused by Rollins' negligence, sued his estate on their behalf. Merchants denied coverage because Rollins' policy had been cancelled prior to the date of the accident.

On appeal, the plaintiff argues that the trial court erroneously found that Rollins defaulted on his payments. Further, she contends that the term "nonpayment" in the July 11, 1996 notice of cancellation did not satisfy the strict requirements of RSA 417-A:4, I, and :5, III (1998). The parties stipulated to the facts. "Accordingly, we conduct a *de novo* review of the trial court's application of the law to the stipulated facts." *Benoit v. Test Systems*, 142 N.H. 47, 49 (1997).

I

■ We first address the plaintiff's argument regarding the payment provisions of the insurance policy. "The interpretation of an insurance policy is a question of law for this court to decide." *Bianco Prof. Assoc. v. Home Ins. Co.*, 144 N.H. 288, 292 (1999). "In interpreting an insurance policy, we take the plain and ordinary meaning of the policy's words in context, and we construe the terms of the policy as would a reasonable person in the position of the

insured based on more than a casual reading of the policy as a whole." *Federal Bake Shop v. Farmington Cas. Co.*, 144 N.H. 40, 42 (1999) (quotation omitted).

The plaintiff asserts that Rollins' failure to make his installment payment on May 30, 1996, was not a default or "nonpayment of premium" because, under the payment plan, the May 30, 1996 installment was recalculated on July 1, 1996, "so as to establish July 17, 1996 as the new due date for payment of the outstanding installment of the premium." The plaintiff argues that the recalculated July 1 bill extended credit to the insured for any previously unpaid installments and set a new due date for payment. She concludes, therefore, that Merchants' notice of cancellation, mailed six days before the July 17 due date, failed to give Rollins the ten-day notice required by RSA 417-A:5, III and his policy. Further, she asserts that an insurance company cannot issue a notice of cancellation before the payment is past due.

■ Nothing in RSA chapter 417-A or Rollins' policy provides that a recalculated bill, sent after an insured has defaulted on a prior payment, cures the default or somehow waives the insurer's right to cancel the policy. Indeed, RSA 417-A:4 expressly allows an insurer to cancel for nonpayment of premium. Nonpayment of premium means failure of the insured to discharge any obligation "in connection with the payment of premiums on a policy, or any installment of such premium." RSA 417-A:1, IV (1998).

It is true, pursuant to the agreed upon payment terms, that when Rollins failed to make an installment payment it was added to the premium balance and the remaining installments were proportionally recalculated to reflect an increase in minimum amount due for each subsequent installment. The policy terms, however, clearly state that Merchants may cancel the policy "for nonpayment of premium." Indeed, the notice sent to Rollins regarding the billing procedure clearly states that the insured's equity in the policy is based on payments and that Rollins' "ownership" in the policy may be "taken away by a failure to make payment on time." The notice also states that it is the insured's duty to keep current with installment payments and that past due notices will not be sent to the insured. Its language stresses the importance of making timely payments of all installments and mentions nothing about extending credit or forgiving a late payment. Although the recalculated July 1 bill, by itself, is somewhat unclear as to what was due and owing, based upon a reading of the payment terms as a whole, an insured standing in Rollins' position should have reasonably understood that

each and every installment payment must be timely made or the policy may be subject to cancellation.

The plaintiff does not dispute that Rollins agreed to an installment payment plan and that he failed to pay an installment on May 30, 1996. Merchants, therefore, was entitled to cancel the policy upon Rollins' failure to make the May payment, provided it gave proper notice. Merchants' notice, issued fifteen days prior to the effective date of cancellation, more than satisfied both the policy and statutory notice requirements. *See* RSA 471-A:5, III.

## II

█ The plaintiff also contends that the July 11, 1996 notice of cancellation failed to strictly comply with RSA 417-A:4, I, and :5, III. Essentially, the plaintiff argues that a notice must expressly state that cancellation is for nonpayment *of premium*. Here, the notice stated that Merchants was cancelling the policy "for the following reason: nonpayment." The notice did not expressly state that the cancellation was for nonpayment *of premium*. This lack of specificity, she contends, rendered the notice of cancellation vague and, thus, ineffective. We disagree.

RSA 417-A:4 provides that an insurer may only cancel a policy that has been in effect for sixty days upon the insured's "[n]onpayment of premium" or upon "[s]pecific request of the insured." RSA 417-A:5, III states that an insurer must provide "the specific reason or reasons" for cancellation or refusal to renew a policy. Neither statute mandates that an insurer use the exact words "nonpayment *of premium*" in a notice of cancellation. The purpose of the specificity requirement is to make sure that the insured is properly notified as to why the policy is being cancelled. It is not the express terminology that controls, but whether the insured was sufficiently informed as to why cancellation would occur.

The trial court correctly found that the only obligation Rollins had under the policy was to pay insurance premiums. Further, pursuant to the terms of the policy and statutory mandate, Merchants could cancel Rollins' policy only at his request or by his failure to pay premiums. According to the record before us, Rollins never requested that his policy be cancelled. Because Rollins' only obligation was to pay insurance premiums and the only statutory basis upon which Merchants could cancel the policy was for nonpayment of premium, the notice of "nonpayment" was sufficiently specific to inform Rollins as to why his policy would be cancelled.

The remaining arguments presented by the plaintiff are without merit and warrant no further discussion. *See Vogel v. Vogel*, 137 N.H. 321, 322 (1993).

*Affirmed.*

NADEAU and DALIANIS, JJ., concurred; GROFF and MANGONES, JJ., superior court justices, specially assigned under RSA 490:3, concurred.